## Kaufman v. City of Carbondale.

*Building laws — Zoning fire ordinance — Reconstruction of building damaged by fire—Municipalities.*

1. A zoning ordinance of a municipality is in derogation of a common right and must be strictly construed in favor of the property owner.

2. Where a zoning ordinance provides that in case of fire within certain lines "any wooden building damaged to the extent of 40 per cent. of its value shall not be rebuilt of the same material without consent of council," and a building consisting of three parts, but structurally connected and intercommunicating, is damaged by fire, such building will be treated as one structure and the 40 per cent. will be based upon the value of the entire building and not upon the value of one of the parts which had been seriously damaged by the fire.

3. In such case, the 40 per cent. damage contemplated by the ordinance is to be measured not by the cost of repairs, but by the proportion that the sound value of the part damaged bears to the sound value of the entire building.

4. Where the city has wrongfully interfered with the reconstruction of the building, the owner is entitled to the loss of rent for the part of the building unusable from the date of the interference to the date of a decree enjoining further interference.

Bill for injunction. C. P. Lackawanna Co., March T., 1925, No. 7.

*Knapp, O'Malley, Hill & Harris*, for plaintiff.

*J. E. Brennan*, for defendants.

MAXEY, J.—This is a bill in equity for an injunction against the defendants, restraining them from interfering with the plaintiff in the repairing of his building, situated in the City of Carbondale, and the restoration of said building to its condition previous to its partial destruction by fire, and praying also for damages as a result of said unlawful interference by the defendants.

The defendants in their answer aver, *inter alia*, that the plaintiff's building is situated within the limits of the fire zone of the City of Carbondale as described by ordinance of the City of Carbondale, known as File of the Council No. 1, Year 1892, as amended by ordinance of the City of Carbondale, known as File of the Council No. 4, Year 1904; and that the City of Carbon-

dale did, by ordinance known as File of the Council No. 6, Year 1922, ordain: "Section 2. In case of fire within said lines, any wooden building damaged to the extent of forty (40) per cent. of its value shall not be rebuilt of the same material without consent of council."

Defendants aver, further, that plaintiff's building was on Dec. 17, 1924, damaged by fire to a great extent, in excess of 40 per cent. of its value, and that to permit the plaintiff to reconstruct his building of like material would be a violation of the ordinance above referred to.

Plaintiffs filed a replication denying that there is a valid ordinance of the City of Carbondale defining the limits of the fire zone, and denying that the alleged amending ordinance, known as File of the Council No. 6, Year 1922, is a valid ordinance, for the reason that the same was never properly passed, advertised and recorded as required by law. Plaintiff's replication avers, further, that said ordinance is unconstitutional and void, in that it is an unreasonable and unnecessary exercise of the police power and is beyond the legal authority of the council of said city, and is in violation of the Constitution of Pennsylvania and the Constitution of the United States, in that it deprives the plaintiff of his property without due process of law and without compensation to him therefor. Plaintiff's replication avers, further, that the damage to the building described in the plaintiff's bill was not in excess of 40 per cent. of its value, but, on the contrary, was not over 25 per cent. thereof, and that, therefore, the ordinance above referred to, if valid and constitutional, does not apply to the facts in this case.

## *Discussion.*

At the hearing in this case, the building of the plaintiff which was affected by the fire referred to was described as being 24 feet wide and as having a total length of 150 feet. The building consists of three parts, described as parts "A," "B" and "C." The three parts were not erected at the same time, but the three buildings were all connected together and were used as one business place.

Part "A" is 24 feet wide by 80 feet long. This is a one-story building.

Part "B" is a one-story structure, 24 feet wide, 32 feet long and 16 feet high.

Part "C" is immediately in the rear of part "B," and is a garage, 24 feet wide and about 38 or 40 feet long, and two stories high.

There is a terra-cotta fire-wall between parts "B" and "C." These buildings were all constructed of wood.

On the night of Dec. 17, 1924, fire damaged the main building, that is, part "A," and slightly damaged parts "B" and "C," the total damage to the latter two parts not exceeding $225.

The defendants contend that in determining whether or not plaintiff's building was damaged to the extent of 40 per cent. of its value, we should treat building "A" as distinct from buildings "B" and "C." The plaintiff contends that buildings "A," "B" and "C" must be treated as one building for the purpose of determining whether or not the fire damaged and destroyed the building to 40 per cent. of its sound value. This is a preliminary question for us to determine, and we determine this against the defendants.

Parts "A," "B" and "C" above described all constitute one complete structure, built together, walled together and used together. The mere fact that part "B" was built later than parts "A" and "C," and that, prior to the building of part "B," parts "A" and "C" were separate structures (as appears from the evidence), is not material to this issue. There is communication

between these parts "A," "B" and "C" by interior doors.  Trucks are run from part "C" through a single partition-wall between "C" and "B" into part "B" for loading purposes.  Part "B" downstairs is used as a warehouse or storeroom of the retail and wholesale store, part "A," with communicating doors.  On the second floor the apartments over part "A" extend over part "B" and rest upon it, and part "B" acts as a support for the rear porch of the apartments of part "A."  The roof of part "B" is used as a clothes yard, and access to part "A" in the rear is obtained by a door in part "B," with a staircase in part "B" communicating with part "A" upstairs.  To remove part "C" from the premises would leave part "B" without a rear wall.

The ordinance in question must be liberally construed in favor of the plaintiff, and in this case not only the liberal but the common-sense construction requires that parts "A," "B" and "C" be considered as parts of one structure or building.

If we refuse the plaintiff the relief he seeks, the financial burden to him will be most substantial.  It will be, first of all, the loss of the sound value of the part "A" as now standing, plus the cost of the removal.  This amounts to at least $15,000 on part "A."

If parts "A" and "B" are included together, it will amount to at least $24,000.

If the building is removed, it will cost the plaintiff, according to witness Robinson, $24,000 to rebuild part "A" of fireproof material.  According to witness Shannon, it will cost $60,000.  In other words, if we find against the plaintiff in this case, we immediately impose on him a loss of from $48,000 to $84,000.  In addition to this, the foundation-walls now under the property would have to be strengthened to withstand the weight of a fireproof building.  This would make further expense.  To subject the plaintiff to this heavy loss and expense, it would have to be clear to the conscience of the chancellor that the ordinance in question was valid and that the facts were against the plaintiff.

We do not deem it necessary to discuss the ordinance, but assuming the ordinance to be constitutional and valid, we think the facts in the case clearly will not bring the plaintiff within the provisions of said ordinance.

After a review of the testimony, we were convinced that, considering parts "A," "B" and "C" as parts of one complete building, the fire which attacked this building on the date in question did not damage the building to the extent of 40 per cent. of its sound value.

First of all, it would be error to hold that the 40 per cent. damage is to be measured by the cost to the defendant of repairing his damage.  The question for us is:  Does the part remaining of the building exceed 60 per cent. or three-fifths of the whole measure of value?

As plaintiff's counsel contends, "the numerator and the denominator of this test fraction must be homogeneous, to wit, each must be value, not the cost of repair or rebuilding."  According to the testimony of every builder, the cost of repairing exceeds anywhere from 20 to 40 per cent. of the sound value of the loss.  To take this excessive cost of repair and use it as the numerator, and take the sound value of the whole building as the denominator, is not only a misconstruction of the ordinance and is unfair to the plaintiff, who is entitled to every reasonable construction in case of doubt, but it leads to the absurd result, as plaintiff's counsel state, that "a building half destroyed would be more than half destroyed by such method of figuring."

In order to uphold the theory of the defendants, the ordinance would have to read as follows:  "Any wooden building damaged to such an extent that the

cost of restoration shall equal or exceed 40 per cent. of the sound value of the entire building before the fire shall not be rebuilt."

The ordinance does not so provide. It simply provides: "Any wooden building damaged to the extent of 40 per cent. of its value shall not be rebuilt of the same material without consent of council."

In order to defeat the plaintiff's petition for an injunction, the defendants must show by the clear weight of the testimony, not that the cost of repairing the part destroyed is 40 per cent. of the sound value of the entire building before the fire, but that the sound value of the part destroyed is 40 per cent. or more of the sound value of the whole building.

It was testified that the sound value of part "A" was $24,000; that of part "B," $3000; that of part "C," $3000. In these estimates the cost of the foundation-walls was not included. This would make the sound value of the entire building before the fire $30,000, not including the foundation-walls.

No witness on either side testified that the sound value of the part of the building destroyed was 40 per cent. of the sound value of the entire building, consisting of parts "A," "B" and "C." Defendants' witness Robinson testified that the sound value of part "A" was $24,576, and that included the plumbing and the electric wiring; and he testified that the cost of repairing the part destroyed would be $11,801.22. He testified that repairs would cost at least 20 per cent. more than the original work. It is easily calculated from this that the sound value of the part destroyed by fire was $9440.80. This would leave the sound value of loss to sound value of part "A" of the building 38 3/10 per cent.

Defendants' witness Rogers testified that the sound value of part "A" was $24,000 and the sound value of the loss was $8850. This would make the percentage of loss 36 8/10 per cent.

Plaintiff's witnesses calculated the percentage of value destroyed as follows, considering only part "A," and leaving out of account foundations (which would have to be strengthened if a fireproof structure was erected): Witness Buckland, 28 9/10 per cent.; witness Boland, 31 7/10 per cent.; witness Eyerman, 33 6/10 per cent.; witness Patton, 25 1/10 per cent.; witness Shannon, 22 8/10 per cent.

It is apparent from a review of the testimony that the defendants have failed to justify their interference with the plaintiff's attempt to repair his building. The facts, therefore, do not bring this case within the operation of the ordinance in question. Whether we consider part "A" as a distinct building, or whether we consider part "A" as only a part of the entire building, consisting of parts "A," "B" and "C," it is obvious that plaintiff's building was not damaged to the extent of 40 per cent. of its value. Therefore, it may be rebuilt of the same material as it formerly consisted of without the consent of council.

We find the facts and conclude the law as follows:

### Findings of fact.

1. The plaintiff is a citizen and resident of the City of Carbondale, Lackawanna County, Pennsylvania.

2. The defendant, the City of Carbondale, is a municipal corporation, to wit, a city of the third class.

3. Prior to Dec. 17, 1924, the plaintiff was the owner of a certain parcel of land, situate in the City of Carbondale, fronting on Salem Avenue, and being 24 feet in front on said avenue and 150 feet in depth, abutting on an alley in the rear to an alley 10 feet wide along the westerly side.

Kaufman *v.* City of Carbondale.

4. On Dec. 17, 1924, the plaintiff's lot of land was improved with a frame building thereon extending from the front of the lot to the rear. The front part of this building was two stories in height and the rear part one and one-half stories. The first floor of this building was used, on and prior to said date, as a store, warehouse and garage, the garage portion of the building occupying that part at the rear abutting upon the alley, while the second floor of the front portion of the building, together with the porch extending over the middle portion of the building, was used as living apartments.

5. The portions of the structure mentioned in the 4th finding of fact and designated by the witness as parts "A," "B" and "C" were built at different times, the front portion, approximately 80 feet in depth, being first built; the portion "C," at times spoken of as a garage, being the second built; and about four or five years prior to the date of this action the parts "A" and "C" being connected together by the middle portion, designated as part "B." Parts of the building are separated only by a partition-wall built of fireproof material, with an opening on the ground floor between parts "B" and "C" in said fireproof wall for the passage of automobiles into part "B," used as a storage and warehouse space for groceries. Parts "B" and "C" are built together, being separated only by an ordinary interior partition-wall of the building, and are connected so that the ground floor of part "A," used as a wholesale grocery store, opens into part "B" by an ordinary interior door, and groceries sold in part "A" are stored in part "B." The living apartments on the second floor of part "A" extend also over and on part "B," the back portion of said part "A" upstairs resting upon the roof of part "B," and the said roof being used for a back yard to said apartments. The said apartments also are reached in the rear by a door opening from the alley on the westerly side of the structure in part "B," leading to a staircase in part "B," which goes to the upstairs apartments. The large sliding doors on part "B" are opened by sliding on supports extending over both parts "A" and "C" of the said structure. All three portions of the building are built together, in the sense that the siding overlaps and the timbers supporting the upper story of part "B" are inserted in and fastened to the end walls of sections "A" and "B." The entire structure is intercommunicating on the first floor, and for several years has been used in connection with the wholesale grocery business.

6. The sound value of part "A" of the building prior to the fire, including the plumbing, electric wiring and heating apparatus, but excluding foundation-walls, was not less than $24,000; the sound value of part "B" before the fire was $3000; the sound value of part "C" before the fire, without foundation-walls, was $3000, making a total sound value before the fire of the entire structure, parts "A," "B" and "C," without foundation-walls, of $30,000.

7. The sound value before the fire of that portion of part "A" which was destroyed by fire was between $5256, the lowest estimate by the plaintiff's witnesses, and $9440.80, the highest estimate by defendants' witnesses. The average value given by all of the witnesses on both sides was about $7000, and it is found as a fact that the sound value of the part destroyed was $7032. The damage to parts "B" and "C" by the fire is negligible, not exceeding $225.

8. The repair or restoration cost of the part of the structure, chiefly confined to part "A," varies from between $7856, the lowest estimate by plaintiff's witnesses, and $11,801, the figure fixed by defendants' witnesses. It is found as a fact that the cost of restoration would be in the neighborhood of $9500.

9. The percentage of difference between the restoration value of the part destroyed and the sound value thereof as a part of the building before the

fire ranges from 20 per cent. to 35 per cent., the cost of repairing being from 20 per cent. to 35 per cent. greater than the sound value of the part destroyed. It is found as a fact that this difference would not be less than 30 per cent.

10. The sound value of the part "A" which would be necessarily destroyed if the plaintiff were compelled to rebuild under the ordinance is $17,500, and of the parts "A" and "B" $20,500.

11. The percentage of sound value of the burned portion to the sound value of the entire structure, "A," "B" and "C," was less than 34 per cent., and the sound value of the part destroyed to the sound value of part "A" alone was less than 30 per cent.

12. The plaintiff in this case was stopped by the city officials, claiming to act under the ordinance in question, on Jan. 17, 1925, by written notice and threat of physical interference on the part of the police of the city if any attempt were made to rebuild except in accordance with the ordinance, and, as a result of said notice, the plaintiff has been prevented from restoring the said property.

13. The pecuniary loss to the plaintiff as a result of said interference has been a loss of $200 per month, said loss extending from the date of the interference to the present.

## Conclusions of law.

1. The ordinance in question in this case is in derogation of common right and must be strictly construed in favor of the property owner.

2. Before the ordinance in this case applies, the burden is upon the municipality to show that that portion of the building which was destroyed had a sound value before destruction of at least 40 per cent. of the sound value of the building.

3. What have been designated as parts "A," "B" and "C" of the building in question in this case are all parts of one continuous, connected structure, and the entire structure must be considered as the building designated under the ordinance.

4. The cost of restoration or repair of the part destroyed is relevant in this case only as a basis for determining the sound value of the loss, and, under the testimony of the witnesses, that sound value, for the purposes of the case, is from 20 per cent. to 35 per cent. less than the cost of repairing.

5. Under the testimony of the witnesses in this case, the percentage of sound value of the part destroyed to the part remaining is less than 40 per cent., whether the building be construed to include only part "A," or whether it be construed to include parts "A" and "B," or whether it be construed to include parts "A," "B" and "C," and, therefore, under any definition of the word "building," the defendant has failed to bring the case within the ordinance.

6. The term "building" includes the parts built into it or a part of it, such as electric wiring, plumbing and heating pipes, radiators and other apparatus connected therewith and built into the said building.

7. Construing the term "building" strictly and in favor of the property owner, foundations would be included as a part thereof in determining the applicability of the ordinance.

8. It is not necessary for us to come to any conclusion as to the validity of the ordinance hereinbefore referred to, as we have found as a fact that the evidence in this case does not bring the property damaged by fire within the provisions of said ordinance.

Kaufman v. City of Carbondale.

9. The interference on the part of the city in the attempted repair and restoration of the building in question, being an interference with private property, was made at the risk of the city, and the city having failed to establish legal warrant for said interference, the plaintiff is entitled to pecuniary damages for the loss sustained, said pecuniary damages, under the evidence, consisting of the loss of rent for a part of the building unusable from Jan. 17, 1925, to the date of this decree.

Under Rule 67 of the Equity Practice of the Courts of Pennsylvania, in effect Jan. 1, 1925, the requests of counsel on both sides for findings of fact and conclusions of law may be treated by the chancellor merely as suggestions. We have so treated them in this case. The rule provides that these requests shall be filed with the chancellor's adjudication. Let them be so filed.

Now, to wit, June 29, 1925, let a decree *nisi* be entered in accordance with the foregoing findings of fact and conclusions of law as follows; exceptions, if any, to this decree to be filed *sec. leg.*:

*Decree nisi.*

Now, to wit, June 29, 1925, let an injunction issue, restraining and enjoining the defendants or any of them, their agents, servants or employees, from further interfering with the plaintiff, Michael Kaufman, in the repairing of the building described in plaintiff's bill and the restoration of the same to its conditions previous to the fire referred to in plaintiff's bill.

The plaintiff shall be paid by the defendants compensation for loss caused by the defendants' unlawful interference with plaintiff's repairing of his said building and the restoration of the same to its former condition, at the rate of $200 per month for five months, or a total of $1000.

From William A. Wilcox, Scranton, Pa.